## Poland v. Poland et al.

January 20, 1950.

James C. Carter, Jr., Judge.

John E. Richardson for appellant.

Paul Carter for appellees.

CLAY, COMMISSIONER—Reversing.

This suit was brought by appellant against appellees, the mother and father of her deceased husband, to obtain custody of her three year old son. The Chancellor denied the relief sought, leaving the child with appellees and allowing appellant only the right of visitation at reasonable times at their residence.

Appellant is a native of England. In 1945 she married there the father of the child, who was in the United States Army. He returned to Elgin Field in Florida, and she followed him sometime later with the baby, to live in a small apartment at Fort Walton. Apparently difficulties developed between them soon after her arrival in the United States, and the husband instituted a divorce action. Shortly thereafter the parents brought the child to Kentucky to visit appellees. About six weeks later they had returned to Florida, leaving the child. Not long after, appellant shot and killed her husband, which act she claims was committed in self-defense. She was not criminally prosecuted.

It is evident appellant is extremely anxious to have her child returned. She did not agree for appellees to have his custody, nor does it appear she ever had any intention of abandoning him. On the other hand, appellees contend she is not a fit and proper person, and that she is not able to furnish a proper home for him.

The record in this case covers a substantial portion of appellant's life, and she has had a full share of difficulties. Certain events reflect adversely on her moral character. The evidence indicates that while in Florida she was employed in taverns which might not be considered highly reputable. There is some suggestion she may have had affairs with other men.

Appellant denied most of the derogatory charges against her. Witnesses on her behalf testified favorably to her moral character. Our conclusion from the evi-

dence is that appellant was not proven unfit to the extent that she should be denied the opportunity to share in the custody and control of her son.

In a case of this sort the determining consideration is what will be for the best interests of the child. Although appellant's brief indicates the circumstances have changed since the taking of proof, on the record it does not appear she would be able to furnish a very good home for the infant. Apparently it is necessary for her to work for a rather unsubstantial wage, and she would have to depend upon others to take care of the child while she was at her place of employment. Probably the best home she could furnish would be a room or a small apartment.

On the other hand, appellees have an adequate country home in which to rear the child; they are financially able to take care of him, and are in a position to bring him up properly. No reflection is cast upon their good moral character.

This is another of those cases where the judgment of Solomon is sorely needed. No solution can perfectly blend the best interests of the child, his mother and his grandparents. We believe, however, that only in the most extreme cases should an infant be completely deprived of at least some loving care by its mother. In view of appellees' feelings toward appellant, the right of visitation at their residence given appellant by the judgment in this case effectively deprives her of any opportunity to see her son under favorable circumstances. For this reason we think the judgment was erroneous.

We accept the decision of the Chancellor to the extent that it gives appellees the principal care and custody of this child. It appears, however, that his best interests will be served by permitting the mother to assume his charge for a certain portion of time. In our opinion this child should be left with the mother for three months out of each year, unless and until a demonstrated change of circumstances calls for a different disposition of the matter. The judgment of the Court should retain jurisdiction of the child, and should require the execution of a reasonable bond by appellant to insure his safe return in the event she wishes to remove

him from Monroe County during the period, or periods, she is permitted to have his custody.

For the reasons stated, the judgment is reversed with directions to enter a judgment in conformity with this opinion.